Bouldin, J.,
delivered the opinion of the court.
. Several questions of much interest and impoi'tance "have been discussed at the bar in this cause, with great research and ability, by counsel on both sides; but in the view taken of the case by the court, it will be necessary to consider only one of those questions, viz: Do the persons whom the Circuit court has declared to be enti *708 tied to the legacy of $3,000 named in the decree-, answer the description and character given by the testator to the legatees of that fund ? Do they constitute the class described? If not, then the decree must be reversed.
It will be observed that none of the appellees are-named in the will; and if they are entitled at all to the-legacy aforesaid, they must show themselves to be thus entitled by showing that, although not named in the will, they are plainly described thereby. They must bring themselves clearly within the descriptive terms used by the testator. The bequest was to a class of persons of a designated character, and bearing certain relations to the testator; and this character and these relations evidently constituted the inducement to the provision. The legatees to whom the bounty was to accrue were not particular individuals, but elect characters. They were to be the testator’s freedmen, his slaves, emancipated by him, under his last will, which, in this respect, was not to take effect until the death of the survivor of the wife and daughter of the testator; down to which time, by the express terms of the will, this class of legatees were to remain slaves, and as such to serve the testator’s wife and daughter. At the death of the survivor of them, and not until then, the testator’s slaves were to be entitled to freedom; and for such of these “slaves,” to use the testator’s own language, “as may be entitled to their freedom under this will,” the provision was to be made “token they acquire their right to freedom under this will.” The class of persons for whom thisprovision was mad ewere slaves of the testator, serving -his wife and daughter as such until the death of the survivor of them, and then, and not until then, acquiring their right to freedom under the testator’s will. The description is plain and unmistakable; and the question is, do .the *709 appellees, Jack Scott and others, answer to that description ? Do they bear the character and relations designated by the testator ? blot having been named in the will at all, but only described, they must of course bring themselves within the terms of the description. Have they done so %
The solution of this question will depend on the just application of well established rules of construction, to some of which we will briefly advert.
It is well settled that wills should be liberally expounded to carry into effect the intention of the testator, apparent on the face of the will, as elucidated and explained by the light of the facts and circumstances surrounding the testator at the date of it^s execution. To give effect to that intention, when thus ascertained, a court of construction, when absolutely necessary, will disregard and reject terms and expressions obviously in conflict therewith; but this will never be done, when consistently with that intention due effect can be given to every part of the will. The will of the testator, as written by him, each and every part thereof, when consistent with itself and the law of the land, is the law of the case, and must be enforced as such.
In the will before us, provision has been made for certain legatees, not designated by name, but who are required by the will to answer a certain description and character therein set forth; and we may safely say -that “ in genei’al, no rule' is better settled than that legatees must ansioer the description and character given of them in the will; so that a bequest to the seventh child of B will not entitle an eighth, who, by the death of the seventh before the testator, becomes the seventh.” 1 Bop, on Legacies 65.
To sustain that proposition, Mr. Roper cites the case of West v. The Lord Primate of Ireland, 3 Bro. C. C. *710 148; a very strong case to show how far the courts have- . . ° . . gone in adhering to the exact description and character given to the legatee by the testator, even when, under the circumstances of the case, it would be reasonable to suppose that the testator would have used different language, could those circumstances have been foreseen. In that case the testator bequeathed as 'follows: “ I desire-that my executor would at his decease, bequeath 100-guineas to Lord Cantalupe for the use of his seventh, or youngest child, in case he should not have a seventh living.”
Lord Cantalupe had six children at the date of the bequest. Another child had been horn previously thereto, but was then dead. Two month’s after the testator’s death another son was born, to Lord Cantalupe, whom he named Septimus; and afterwards other children ■ were horn, the youngest of whom was named Matilda; and the question was, whether Septimus or Matilda was, entitled to the legacy. Lord Thurlow was of opinion that although Septimus was at the time the legacy accrued the seventh living child of Lord Cantalupe, yet as he was in point of fact the eighth, in ¡order of bii’th, he could not take by the description of the seventh; and the legacy was given to Matilda; and this decree, the chancellor affirmed on rehearing. 1 Rop. 65-6.
Ve would not he understood as affirming that in a case exactly like that, this court would carry the principle as far as Lord Thurlow did. "We have referred to it; to show how very reluctant the courts have ever been to depart in any respect from the descriptive terms of the will.
“ Of such importance is it,” (says Mr. Roper,) “fora legatee to answer the terms of the bequest, that if he do so, he may even make a good title to the legacy or portion, notwithstanding it may appear contradictory to the-. *711 testator’s intention.” 1 Rop. 67; citing the case of Trafford v. Ashton, 2 Vern. R. 660, and 2 Eq. Ca. abr. p. 213, pl. 8. same case.
_ The case of Trafford v. Ashton was, in principle, the same with West v. The Lord Primate of Ireland, already referred to. It is stated by Mr. Roper, as follows:
■ “ Mr. Vavasom devised all his estate in trust for his daughter for life, remainder to her second son to be begotten in tail male, and so to every younger son: remainder to her eldest daughter and the first son of her body; the testator apologizing for omitting the eldest son, from the expectation of his daughter marrying so prudently as to insure a provision for such son. The daughter married Sir Ralph Ashton and had children, Edmund, the eldest, Richard, and Ann Trafford. Edmund died shortly after his birth, and then Richard was born who was the only and eldest son of Lady Ashton. The question was, whether he was entitled under the description “ second son,” to Mr. Vavasom’s estate ; and it was determined in the affirmative; the Chancellor observing that Second son was second in the order of birth. Richard, therefore, answering that description, was entitled, although it was contrary to the testator’s intention.” This case, it will be seen, is the converse of the case of West v. The Lord Primate of Ireland, but is the same in principle; and whilst he would not be understood as saying that we would follow either of them upon precisely the same state of facts, yet we do not hesitate to say that we approve th& principle intended to be affirmed, viz: that legatees, especially when designated by class and description only, must in general bring themselves clearly within the description and character given to them by the testator. This description and character will only be departed from by a court of construction when on the face of the will itself, as explained by the *712 facts and circumstances attending its execution, it shall he .made to appear that there was a mistaken description in the will, or that the description was itself immaterial.. This proposition is sustained by the case of Bristow v. Bristow, 5 Beav. R 289, which is thus stated by Mr. Roper, same Yol. p. 170. “A legacy of £800 was given to the four eldest children of my cousin O. B. (naming them,) equally,” and “ £200 to the remaining children of my uncle G. B.” The testatrix hadboth a cousin and an uncle G. B.; the cousin had seven children only, known to the testatrix, and the uncle had only one, S. whom the testatrix in her will called cousin, and who had three children. Lord Langdale, M. R. held, that the three remaining children of the cousin G. B. were intended.”
Row, in this case, although the parties declared to be entitled to the legacy did not literally answer the description annexed to their names, yet there was enough on the face of the will, as explained by the state of the families at the date thereof, ta show clearly that there was a mistaken description, and that they were really the persons intended to be described. In such case the principles laid down is not invaded. The will itself, in connection with the surrounding facts and circumstances, showed plainly who were intended to be described; the parties declared to be entitled, thus brought themselves clearly within the description intended by the will expounded as aforesaid. But how stands the case before us? Who were the persons, or rather class of persons intended to be provided for by the testator in this case? Clearly, not any particular individuals, for none are-named; and the guarded terms of the bequest preclude the idea of individual benefit.- A class only was provided for, to answer a certain description and character, pointed out in unmistakeable terms by the testator himself. Bor this class, as a class, answering, at the time *713 they should become the recipients of his bounty, the description and bearing the relations designated by the testator, and for this class only, was the provision made. What was the class ? and what relations were they to bear to the testator when his bounty should be invoked? We answer from the will itself, and'almost in its words, his slaves remaining such dcwn to the death of the survivor of his wife and daughter, and in their service; and then, and not until then, to be emancipated by and under his last will. This was the class, and thus to be emancipated, for whom the testator intended to provide. They were to be his freed-men, made such at that remote period in the future, by his will, and claiming their rights to freedom thereunder. Such is the class described in this will, and as none of the class are personally named, only those who can bring themselves fairly within the descriptive terms of the will, can claim the testator’s bounty. Do the appellees answer that description ? Do they claim the legacy in question as having been slaves of the testator down to the death of the survivor of his wife and daughter, and by virtue of emancipation then, by and under the testator’s last will ? Is this their claim ? Far from it. The event, on which alone such claim is dependent, has not yet occurred. The testator’s daughter is yet alive, and may live for many years. Ere she dies, every one of the persons now claiming a legacy dependent on that event, may themselves be dead. They do not pretend, and could not pretend, that the event had happened on which the provision was to take effect; for their suit is now pending against the testator’s daughter. For do they claim in the character given by the testator to this class of legatees. They do not claim as his freedmen emancipated by his will. Such is neither their claim nor their status. They claim their right to freedom under another and higher power, and directly *714 against the testator’s will; and do not, therefore, pretend-that they come within the liberal terms of the bequest But it is insisted that they are within its spirit, that they were to be provided for, when free; and having successfully asserted their right to freedom, that it was immaterial whether they became free under the will or otherwise. We are of a different opinion. We do not think that the testator, could he have foreseen the events which have occurred, would have so modified the terms of the bequest as to allow it to take effect in favor of the appellees, and against the prime objects of his affection and bounty—his wife and daughter. On the contrary, we think that the future status .of this class of legatees, as his freedmen, made such by his will, was the inducement to his bounty to them. It was in that character alone that they were to take. And could he have foreseen that they would acquire and assert their right to freedom, independently of his will, and against its provisions, disturbing and to a great extent overthrowing the same, we think the presumption reasonable that he would have made no attempt to provide for them at all. We see nothing, therefore, in the circumstances of the case, nor in the intrinsic justice and merit of the claim, which should induce the court, in disregard of the principles above laid down, to dispense with the plain description and character given to the legatees by the-testator. On the contrary, we think that we have, in the circumstances of the case before us, every inducement to a just and and faithful application of the rule, that the legatee must show himself entitled to the legacy in the character and according to the description set forth in the will. We think, as we have already said, that the character in which the legatees should claim was, in this case, of the essence of the bequest; and in that aspect, the-principle which should control our ac *715 tion is the same in effect with that established in a class of cases in which a legacy is given to a person by name, but under pai’ticular description or character superadded, which has been falsely assumed; or where a testator, induced by the representations of third parties to regard a legatee in a relationship which claims his bounty, bequeaths him a legacy by a description according with such supposed relationship ; and no other motive for such bounty can be supposed. In such cases the law will not allow the legatee to claim the legacy, notwithstanding it be given to him by name. Although he be the person in point of fact named as the legatee, yet as he does not bear the character and sustain the relation to the testator set forth in the will, and which induced the bequest, he cannot take. The cases of Kennell v. Abbot; 4. Ves. R. 802, and Exparte Wallop 4 Bro. C. C. 90, are of this character. In the first, a woman supposed to be married, under a power made a will in favor “ of her husband, Edward Lovell.” It turned out that at the date of the supposed marriage, Lovell was the husband of another woman, and of course was not the husband of the testatrix.
The other was a case in which the testator was induced by a woman with whom he was living, to believe that she was the mother by him of certain children, which she showed to him. The children shown him were neither hers nor his, but he gave them legacies as such. In neither of these cases was there any doubt as to the persons to whom the legacies were given. They were known in each case to the testator, and personally named. But the legacies were given to them, under a certain description and character; and says Mr. Roper, in .commenting on them, “ the description and character of the legatees were of the essence of the bequest; and it was a reasonable presumption that if *716 ■the testators had known the real situation of the lega-' tees, they would have not been objects of their bounty;”-1 Koper 171.
The principle applies a fortiori in this case, in which no one is named, and the legatee must claim by “ description and character” alone. The “ description and character” of the legatees, as freedmen of the testator, acquiring their right to freedom under his last will, at the death of the survsvor of his wife and daughter,” were of the essence of the bequest; and “it is a reasonable presumption that if the testator “ could have known that' they would not remain his slaves, and render to his wife and daughter the service required of them, but would assert and maintain their right to freedom outside the will, and thus disturb and break up its provisions, to the great less and damage of the first objects of his bounty, he would have made no attempt to provide for them. The terms of the will do not entitle them to demand the legacy; and we see nothing in the facts and circumstances of the case to make it either just or reasonable that they should have it.
Suppose, for instance, that after the testator’s death, these same appellees had instituted against the wife and daughter of the appellant a suit. “ m forma pauperis,” to establish their freedom; and had established the same outside and against the will, could it be for a moment pretended that such persons were entitled to a legacy given to a class of persons, who, at the death of the survivor of the testator’s wife and daughter, should become entitled to and acquire a right to freedom under and not against his will. Could they be said in any sense or degree to answer the “ description and character ” set forth in the will? We think not yet; such is in effect the "attitude of the appellees . They claim under a power paramount "to the will, and against its provisions. They not only do *717 not answer the description and character required by the will, but present themselves in a character utterly variant therefrom, and in irreconcilable conflict therewith. Under such circumstances we are of opinion that the appellees have shown no title to the legacy in question or any part thereof; and the decree must be reversed, and their bill dismissed.
This view of the case renders it unnecessary to consider the questions of election, compensation and apportionment so earnestly and ably argued at the bar.
Decree reversed, and bill dismissed.